## Wick, Administratrix, *v.* Roop, Appellant.

*Mortgages—Scire facias sur mortgage—Defenses — Payment — Evidence—Presumption.*

1. The possession by a debtor of a bond or other evidence of indebtedness raises a presumption of fact that the debt has been paid; such presumption may be rebutted by any other evidence. If possession can be accounted for on any other hypothesis than that of payment, the presumption is rebutted.

2. In an action of scire facias sur mortgage brought by the administratrix of a decedent's estate, the defense was payment. It appeared that defendant had held receipts purporting to be signed by decedent for the amount of the loan; the receipts were not produced, defendant contending that they were lost. The plaintiff produced the evidence of a handwriting expert who examined the receipts, to the effect that the signatures were forgeries. The mortgage was not satisfied of record but the bond was in the possession of the defendant; there was, however, no payment endorsed on the bond. There was some evidence that defendant had access to certain of the papers of decedent from which the inference was sought to be drawn that she had abstracted the bond. *Held,* the case was for the jury and a verdict for the plaintiff was sustained.

Argued Feb. 1, 1916. Appeal, No. 102, Jan. T., 1915, by defendant, from judgment of C. P. No. 2, Philadelphia Co., June T., 1914, No. 2299, on verdict for plaintiff, in case of Annie E. Wick, Administratrix of the Estate of David B. Wick, Deceased, v. Cordelia G. Roop. Before BROWN, C. J., POTTER, STEWART, FRAZER and WALLING, JJ. Affirmed.

Scire facias sur mortgage. Before DOUGHERTY, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,405 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*B. D. Oliensis,* with him *E. Mason Roseville,* for appellant.—The possession by defendant of the bond to secure which the mortgage in question was given, and the fact that there was evidence that she had that bond in her possession eight months before decedent's death clearly raises the presumption of payment which entitled the defendant to judgment in her favor: Helzer v. Helzer, 193 Pa. 217; Clymer v. Croff, 220 Pa. 580.

*Augustus Trask Ashton,* with him *P. F. Rothermel, 3d,* and *Victor Frey,* for appellee.—The presumption of payment was rebutted by the circumstances: Clymer v. Groff, 220 Pa. 580; Anderson v. Culver, 127 N. Y. 377 (28 N. E. Repr. 32).

OPINION BY MR. JUSTICE POTTER, April 17, 1916:

This was a scire facias brought by the administratrix of the estate of D. B. Wick, deceased, against the defendant to recover the amount of a mortgage for $3,000, secured upon property of defendant. The defense was payment. On the trial it appeared that, on February 27, 1911, the defendant borrowed from D. B. Wick the sum of $3,500, and gave him two bonds and mortgages, one for $3,000, being the mortgage in suit, and the other for $500, both payable at the expiration of five years. Defendant alleged that on March 27, 1911, she paid Wick $500 in satisfaction of the smaller mortgage, and that on June 27th and November 27, 1911, she paid him the sums of $2,000 and $1,000 respectively, in satisfaction of the mortgage in suit. It also appeared that defendant had held receipts purporting to be signed by the decedent, showing the payments as claimed, and certifying that the mortgages had been paid. These receipts were not produced at the trial, defendant claiming that she had lost them. She had in her possession the bonds, and the fire insurance policies which had been assigned as collateral to the mortgages, but the policies were not reassigned to her. The mortgages were not found after Mr. Wick's death, and they were unsatisfied on the record. Plaintiff claimed that the receipts were forgeries. They had been submitted by former counsel for the defendant to a handwriting expert, and had subsequently been returned to her, and, as she claimed, lost. The expert had, however, preserved photographic copies of the signatures to the receipts, and he testified that they were not in the same handwriting as decedent's genuine signature, but were an imitation of a signature not writ-

ten by him.   The trial judge submitted the question of payment as one of fact to the jury, and they found in favor of the plaintiff.   Defendant has appealed, and her counsel complain, in the first place, that the receipts, which were examined by the handwriting expert, were not sufficiently identified as to make his testimony admissible.   An examination of the evidence shows that defendant testified that she gave the receipts and certificate to her attorney, Mr. Shannon, together with the bonds and insurance policies.   Mr. Melcher, the handwriting expert, testified that Mr. Shannon turned over to him three receipts and the certificate, also two bonds and warrants and certain checks, and that he made an examination of the papers submitted to him, and made a written report to Mr. Shannon of the result of his examination, and that he returned the papers to Mr. Shannon.   Defendant's subsequent counsel, Mr. Roseville, testified that he received the receipts, bonds and other papers from Mr. Shannon, and defendant further testified that she in turn received the papers from Mr. Roseville, and that the receipts and certificate had since been lost.   Copies of the receipts were identified by Mr. Roseville.   On cross-examination defendant said that she had never paid any one for looking at the receipts. She had paid money to her attorney, but did not know what it was for, and she had never read the examiner's report, and did not know anything about it.   Her testimony was evasive.   We think the testimony as a whole was, however, sufficient for its submission to the jury, as to the identity of the receipts given by defendant to Mr. Shannon, with those given by him to Mr. Melcher and examined by him.   It is not suggested that Mr. Shannon substituted, or could have had any motive to substitute, any other receipts for those placed in his hands by his client.   He was prevented from testifying on the subject by reason of his relation as counsel to defendant.   But it was for the jury to say, under the evidence which was before them, whether the receipts

examined by Mr. Melcher were those received by Mr. Shannon from the defendant. By her failure to produce the receipts the defendant opened the door to the plaintiff to offer secondary evidence as to their contents, and the question of their genuineness was then for determination by the jury.

Counsel for appellant also contend that the charge as a whole was unduly favorable to the plaintiff. It does not appear, however, that the charge was in any way inadequate or misleading. That it was favorable to the plaintiff was due to the evasive character of defendant's testimony, as well as to the uncontradicted evidence of the handwriting expert that the signatures to the receipts submitted to him by defendant's counsel were not in the handwriting of the decedent, but were copied by tracing from a signature which was not written by him. The trial judge expressly called the attention of the jury to the testimony of defendant and her witness that payments had been made by the former to decedent, and receipts given. He said to the jury: "If you believe that this defendant paid the two thousand dollars on the 7th of June, 1911, on account of this mortgage and she paid the balance of one thousand dollars in November or December of the same year, then your verdict should be for the defendant. If, however, you believe that her story is not true, and that she did not pay that money, then your verdict should be for the plaintiff for the full amount of the plaintiff's claim with interest." Time and again, during his charge, the judge cautioned the jury that the weight to be given to the testimony of the witnesses was entirely for them. Counsel for appellant also contend that the fact that defendant had in her possession the bond which accompanied the mortgage in suit, and that she also had the fire insurance policy which the decedent had held as collateral, raised a presumption of payment which was not rebutted. It is true that the possession by a debtor of a bond or other evidence of his indebtedness raises a presumption of fact that the debt

has been paid. But this presumption is one which may be rebutted. In Clymer v. Groff, 220 Pa. 580, this court said (p. 584): "The general principle of law on this subject is set forth in Crocker v. Thompson, 44 Mass. 224, where Chief Justice SHAW says (p. 231): 'In general it may be admitted that the production by the mortgagor, or those claiming under him, of a note secured by mortgage, will raise a presumption, in the absence of all other proof, that it has been paid. But this is a presumption of fact, not of law, and will be rebutted by any other evidence. If the possession and production of the note can be satisfactorily accounted for upon any other hypothesis than that of payment of it to the holder, it will rebut such presumption.' And in Grimes v. Hilliary, 150 Ill. 141, the court said (p. 149): 'Ordinarily the owner of a note retains it until it is paid. Hence, where it is found in the possession of the maker, the presumption of payment arises. But where the maker has access to the papers of the holder, and may have acquired the note as well without payment as with, the presumption of payment does not arise. There is no presumption prejudicial to the maker from the possession, simply for the reason that the presumption of innocence would repel it. There is simply no presumption that the note is, or is not paid, leaving the party having the affirmative upon the issue to establish the fact of payment.'" In the present case the facts upon which plaintiff relied, as being sufficient to rebut the presumption of payment, are that, while the bond was in the possession of appellant, the mortgage was not, nor was the mortgage satisfied on the record. While the appellant had in her possession the fire insurance policy, yet it had not been reassigned to her and it still stands with the loss payable to the decedent as mortgagee. No receipt is endorsed on the bond, and the receipts for payments alleged by appellant to have been made in satisfaction of the bond and mortgage have been found by the jury to be forgeries. Finally, there is the fact that

the decedent during his last illness kept under his pillow a wallet containing papers, and that appellant visited him occasionally while he was ill. As to this last point, the evidence upon which to rest the conclusion that appellant abstracted the papers is not very satisfactory, but we think that upon the whole the evidence upon the question of payment was sufficient to justify its submission to the jury, and it was for them to say whether the presumption arising from the possession of the bond was rebutted. In support of their position, counsel for appellant cite the decision in Helzer v. Helzer, 193 Pa. 217, in which it was held that where a judgment note was in the possession of the maker at the time of the payee's death, and there was no evidence either of payment or nonpayment, a presumption of payment arose and a verdict for the defendant was properly directed. In that case Mr. Justice MITCHELL said (p. 223) : "There was no evidence either of payment or nonpayment of the note, the plaintiff offering none and the defendant being rendered incompetent to testify by the death of the payee. We have the question, therefore, on the legal presumption alone, whether the payee can recover on a judgment note which is in the hands of the maker, with no explanation how it got there after delivery." But the case now before us is different, in that appellant here did not rely upon the presumption of payment, but attempted to show actual payment by affirmative proof. The trial judge properly instructed the jury that the fact that she had possession of the bond raised a presumption in her favor that she had paid off the loan to secure which the bond was given, and then left it to the jury to say whether that presumption was rebutted by the other testimony in the case. Neither in the fact of its submission, nor in the manner in which the disputed question was presented to the jury by the trial judge, do we find any error.

The judgment is affirmed.